UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| ELIDA REYES, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-354 |
| § | |
| COUNTY OF BROOKS, TEXAS, *et al*, § | |
| § | |
| Defendants. § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Plaintiff Elida Reyes filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that her rights under the Eighth Amendment to the United States Constitution were violated by Defendants Brooks County, Texas and Sheriff Rey Rodriguez.[1] Defendants filed a motion for summary judgment on September 29, 2014 to which Plaintiff responded on October 13, 2014 and Defendants replied on October 21, 2014 (D.E. 22, 23, 24). For the reasons stated herein, it is respectfully recommended that the motion for summary judgment be granted.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is proper in this court because the actions about which plaintiff complains occurred in Brooks County, Texas.

---

[1] Plaintiff initially brought additional state law claims for negligence and wrongful death, but the claims were dismissed by the District Court on June 21, 2014 (D.E. 19).

# BACKGROUND

The following recitation of facts is taken from Plaintiff's pleadings and the evidence in the record and viewed in the light most favorable to her. Plaintiff was incarcerated at the Brooks County jail from September 23, 2011 until October 17, 2011. She was pregnant at the time she was placed in the jail and informed Brooks County officials of her pregnancy. Plaintiff did not report any medical problems during the jail intake process.

On October 10, 2011 Plaintiff put in a request to see a doctor, reporting that she was experiencing continual strong cramping in her lower abdomen. She received a response dated the next day telling her that the request had been forwarded to "D. Bazan" and that an appointment would be made (Offender Request From, D.E. 23-1 at 20).

Plaintiff attached a copy of a handwritten diary to her response to the motion for summary judgment.[2] In the diary, she noted on October 10, 2011 that she was having pain and had asked to see a doctor. She also mentioned that she was feeling "kinda sick" and had slept a lot (Diary, D.E. 23-1 at 14-15). In Plaintiff's October 13, 2011 diary entry she did not note any pain or discomfort. In an entry dated October 14, 2011 Plaintiff wrote that she felt something like a balloon popping and urinated on herself and added that such a thing had never happened with her other pregnancies. She commented that she had not heard anything about her request to see a doctor (*Id.* at 17). In the October 15, 2011 and October 16, 2011 diary entries no mention is made of any health concerns (*Id.* at 17-18).

---

[2] References to Plaintiff's diary and her medical records are made only for the purpose of understanding Plaintiff's allegations. As discussed more fully below, neither the diary nor the medical records are competent summary judgment evidence.

On October 17, 2011 Plaintiff had cramping and vaginal bleeding and an ambulance was called. She waited forty-five minutes for the ambulance to arrive and the trip to the hospital took another forty-five minutes. She arrived at the hospital in terrible pain and the doctor told her she was in labor. A baby boy was delivered almost immediately but was stillborn (Deposition of Elida Reyes at 75-77; D.E. 22-1 at 9-10).

The delivery notes indicate that Plaintiff reported that she had experienced vaginal bleeding and contractions for one day. She presented with the fetus and the placenta in the vagina and there were no fetal heart tones. Minutes after arriving Plaintiff delivered the baby. His eyes were fused and he was a normal appearing male (Progress notes, D.E. 23-1 at 11).

The pathology report stated that the fetus was at twenty-one weeks of development, was delivered spontaneously and there appeared to be "clots not fluid" around the baby. Regarding the fetus the doctor noted "vascular congestion and petechiae."[3] Regarding the placenta, the doctor noted "acute chorioamnionitis[4] and vasculitis.[5]" (Surgical Pathology Report, D.E. 23-2 at 13). Plaintiff was released on bond shortly after the stillbirth of the baby (Reyes Depo. at 20; D.E. 22-1 at 10).

In her complaint, Plaintiff contends that Sheriff Rey Rodriguez and the staff under his control were deliberately indifferent to her serious medical needs which resulted in

---

[3] Petechiae are pinpoint round spots that appear on the skin as a result of bleeding under the skin. http://www.mayoclinic.org/symptoms/petechiae/basics/definition/sym-20050724 (last viewed November 3, 2014).

[4] Chorioamnionitis is a bacterial infection of the membrane that surrounds the fetus and the amniotic fluid. http://my.clevelandclinic.org/health/diseases_conditions/hic_Am_I_Pregnant/hic_PrematureLabor/hic Chorioamnionitis (last viewed November 3, 2014).

[5] Vasculitis is an inflammation of the blood vessels. http://www.mayoclinic.org/diseases-conditions/vasculitis/basics/definition/con-20026049 (last viewed November 3, 2014).

physical pain, severe emotional distress, mental anguish, permanent impairment and the wrongful death of her child. Plaintiff further alleges that there is an affirmative causal link between the deliberate indifference to her serious medical needs and the policies and practices promulgated by Defendant Rodriguez. Plaintiff also argues that the jailers and other officers were acting under color of state law and that they were endowed and were acting as an instrumentality of the State.

In their motion for summary judgment, Defendants argue that Brooks County had a policy, custom and practice of providing medical care for inmates' serious medical needs and that Plaintiff has failed to show a causal link between a Brooks County policy and her alleged constitutional deprivation. Defendants also argue that Plaintiff has failed to present evidence that any Brooks County jail personnel were deliberately indifferent to her serious medical needs and that there is no evidence that Brooks County's delay in providing Plaintiff medical treatment caused her any physical injury.

## APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a

whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.*

Affidavits must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). *See also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)(per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d

at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

**B.  Evidence**

Defendants object to the copies of the diary entries submitted by Plaintiff as well as the medical documentation, arguing that none of it has been properly authenticated. Defendants are correct.  The documents are unauthenticated and unverified and therefore are not competent summary judgment evidence.  *King*, 31 F.3d at 346.  If the diary entries were authenticated as an exhibit to her deposition testimony, Plaintiff could have, but did not, submit the deposition testimony authenticating the notes.  Alternatively, she could have, but did not, provide an affidavit authenticating the notes.

However, even if the diary entries were properly authenticated and properly before the Court, it would not affect the recommendation that summary judgment be granted for Defendants.

**C.  Deliberate Indifference**

Plaintiff argues that defendants have violated her constitutional rights because they were deliberately indifferent to her need for medical care.  Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required.  *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006).

Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.*, 429 U.S. at 104-05. A prison official acts with deliberate indifference if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 842, 847 (1994).

Deliberate indifference is an extremely high standard to meet. A plaintiff must show that the official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for his serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(citations omitted). Although inadequate medical treatment may, at some point, rise to the level of a constitutional violation, malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)(citations omitted). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)(citations omitted). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

At her intake, Plaintiff advised jail personnel that she was pregnant and healthy (Deposition of Elida Reyes at 41; D.E. 22-1 at 6). The only competent summary judgment evidence in the record regarding Plaintiff's one attempt to obtain medical care is a copy of the written request Plaintiff made on October 10, 2014 to see a doctor because of abdominal

pain and cramping. Plaintiff has presented no evidence that jail personnel ignored her complaints or engaged in conduct evincing a wanton disregard for her serious medical needs. The note indicates that jail personnel intended to schedule a doctor visit. At most, the failure to schedule Plaintiff for an appointment was negligent.

Plaintiff's journal notes do not even indicate any alarm on her part on October 10 when she did ask to see a doctor. She states "I am praying that I get out on Bond. I made a request to see the Doctor since am going on 5 months pregnant & am feeling some pain. Hopefully I can see the doctor pretty soon. . . I put a request to see the Doctor on 10-10-11 the Jail administrator told me she will make an appt. . . We will see how long that takes" (D.E. 23-1 at 14-15). Her next entry about her pregnancy was on the October 14th when she states she heard a balloon pop and urinated on the bed (*Id.* at 17). Plaintiff does not mention in her journal that she told any jail personnel about this event, and there are no statements about additional requests for medical care that she made to jail officials. There is no evidence to show that jail personnel knew Plaintiff felt a "pop" and leaked fluid on October 14, 2011 or that she felt sick in any way. Plaintiff failed to present additional notes, deposition testimony, or affidavits about any additional requests for medical care. When, on October 17, 2011, Plaintiff started having vaginal bleeding and pain an ambulance was called and she was transferred via ambulance to a hospital emergency room. *Compare Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007)(summary judgment reversed where evidence showed individual jail employees knew pregnant inmate had been leaking amniotic fluid for more than a week but failed to obtain appointment with obstetrician even though prison doctor recommended she see one), and *Pool v. Sebastian County, Arkansas,*

418 F.3d 934 (8th Cir. 2005)(summary judgment inappropriate where evidence showed pregnant inmate had visible vaginal bleeding, was curled up and crying from pain in her cell and ultimately delivered stillborn child in cell).

Nor do the notes from the hospital where Plaintiff delivered her stillborn son indicate that had she been seen earlier the outcome would have been different. The notes shed no light on the underlying cause of the stillbirth and Plaintiff submitted no other evidence from which a factfinder could conclude that had she been seen by a medical professional between October 10, 2011 and October 17, 2011, her baby would not have been stillborn. If the cause of death were due to a delay in medical care, Plaintiff could have, but did not, submit an affidavit, report, or deposition testimony from a doctor, a health care official. Surely if such evidence existed, Plaintiff would have presented it. Because she bore the burden of producing such evidence, she cannot show that fact issues preclude summary judgment.

**D. Liability of Sheriff and County**

Even if Plaintiff had been able to show that individual jail employees were deliberately indifferent to her serious medical needs, she has presented no evidence to support her allegation that the Sheriff or County instituted a custom or policy that resulted in deliberate indifference. Plaintiff has not alleged that Defendant Gonzalez had any knowledge of her treatment while at the Brooks County jail and there is no respondeat superior theory of liability under 42 U.S.C. § 1983. *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999)(citing *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978)). To the extent Plaintiff sued Gonzalez in his official capacity, such a suit is

to be treated as a suit against Brooks County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

In order to show that Brooks County was liable for any constitutional violation based on Plaintiff's allegations of deliberate indifference to serious medical needs, Plaintiff would have to show that her injuries were caused by (1) an official policy or custom; (2) promulgated by the municipal policy-maker; (3) that was the moving force behind the violation of her constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell*, 436 U.S. at 694). A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it "through some official action or imprimatur." *Piotrowski*, 237 F.3d at 578.

Official policy can arise in various forms. It may be a policy statement, ordinance, regulation or decision that has been officially adopted and promulgated by a policy maker. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)(en banc). Or, it may arise in the form of a wide-spread practice that, while unofficial, is "'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 841).

Brooks County presented evidence that it has a written policy of providing routine and emergency medical care to inmates on a 24-hour basis (Aff. of Rey Rodriguez and copy of Brooks County Health Services Plan, D.E. 22-2 at 2-4, 9-12). Although Plaintiff was not seen by a doctor for a week after she made a request, she has presented no evidence to support her allegation that Brooks County had an official or unofficial policy of being deliberately indifferent to the serious medical needs of inmates. Nor did she present any

evidence of a wide-spread practice that, while unofficial, is so common and well-settled as to constitute a custom that fairly represents municipal policy. She has not met her burden of demonstrating that factual issues exist that preclude summary judgment.

While the loss of Plaintiff's child was tragic, there is no evidence in the record that the delay in having her seen by a doctor amounted to deliberate indifference to a serious medical need. Accordingly, Plaintiff has failed to show that either of the Defendants violated her right to be free of cruel and unusual punishment under the Eighth Amendment to the Constitution.

## RECOMMENDATION

Based on the foregoing analysis of Plaintiff's failure to present any fact issue precluding entry of summary judgment, it is respectfully recommended that Defendants' motion for summary judgment (D.E. 22) be GRANTED and that judgment be entered for Defendants on Plaintiff's 42 U.S.C. § 1983 cause of action.

Respectfully submitted this 17th day of December, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).